# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**LUCAS R. ZARLENGO,**

    Plaintiff,

**v.**                            **CIVIL ACTION NO.: 3:13-CV-98**
                                           **(JUDGE GROH)**

**CAZ & ASSOCIATE, INC., d/b/a**
**Hillbrook Inn & Spa,**

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT RENEWED MOTION AND REQUEST FOR ENTRY OF ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Currently pending before the Court are Defendant Caz & Associate, Inc. d/b/a Hillbrook Inn & Spa's Motion for Summary Judgment [ECF 19], Request for Entry of Order Granting Motion for Summary Judgment [ECF 27], and Renewed Motion for Entry of Order Granting Motion for Summary Judgment or in the Alternative for Dismissal [ECF 28]. For the following reasons, the Court **GRANTS** the Motion for Summary Judgment and **DENIES AS MOOT** the Renewed Motion and Request for Entry of Order Granting Motion for Summary Judgment.

### I. Background

**1.**     **Facts**[1]

In November 2010, Lucas Zarlengo was having brunch at Hillbrook Inn & Spa. Zarlengo Dep. 81. Zarlengo was a licensed massage therapist. Id. During brunch, he

---

[1] The Court considers all inferences drawn from the facts in the light most favorable to Zarlengo. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

asked Hillbrook's co-owner, Carissa Zanella, if Hillbrook needed massage therapists. Id. Zanella replied Hillbrook would be interested in a massage therapist. Id. She asked Zarlengo to submit a resume and schedule a time to meet with her. Id.

Zanella later interviewed Zarlengo. Id. at 87. After the interview, Zanella told Zarlengo he could work as a massage therapist. Id. Zarlengo did not receive a letter offering him a job at Hillbrook or an employee handbook. Id. at 87-88. Hillbrook did not provide Zarlengo with any training or direction about how to give a massage. Id. at 122. Hillbrook also never gave Zarlengo a formal performance evaluation. Id. at 125.

When Zarlengo gave massages at Hillbrook, Hillbrook called Zarlengo to see if he was available for an appointment. Id. at 104. Hillbrook did not require that he work a set number of hours per week, be available at any particular time, or obtain approval before taking time off. Id. at 69, 103-04. Additionally, when assigning appointments, Hillbrook had a policy of honoring a guest's preference for a male or female therapist. Christopher Zanella Aff. Hillbrook later changed the scheduling process to use an online calendar. Id. at 104. Massage therapists posted when they were available on the calendar. Id. Hillbrook used that information to assign massage therapists to appointments. Id. at 104-05.

As for Zarlengo's compensation, Hillbrook did not provide Zarlengo with health insurance, paid sick leave, paid vacation, or any other paid benefits. Id. at 86. Hillbrook also did not pay Zarlengo a salary or hourly rate. Id. at 90-91. Hillbrook instead paid Zarlengo for each massage treatment. Id. at 90. Initially, Zarlengo received $96.00 per treatment, $75.00 for the massage and an automatic gratuity. Id. Hillbrook later changed this arrangement to pay Zarlengo sixty percent of each treatment plus a gratuity. Id. at 90-91. Hillbrook never withheld taxes from Zarlengo's compensation. Id. at 97. Hillbrook

provided Zarlengo with a Form 1099.  Id. at 97, 99.  Zarlengo paid his own taxes.  Id. at 97.  He also maintained his own liability insurance.  Id. at 88.

When Zarlengo began giving massages at Hillbrook, Hillbrook did not have a dedicated space for massages or have massage equipment.  Id. at 101.  Zarlengo accordingly brought his own table, sheets, lotion, and oil for appointments.  Id.  Hillbrook later opened a spa facility on its grounds.  Id.  After that happened, Hillbrook provided Zarlengo with tables, sheets, lotion, and oil.  Id.

While working at Hillbrook, Zarlengo also gave massages at the Clarion.  Id. at 84.  Hillbrook did not prohibit Zarlengo from providing massage services to other entities or individuals.  Id.  Zarlengo also worked as a fitness instructor at a gym, taught classes at a community college, and ran several businesses.  Id. at 9, 38, 40-41, 50-51, 56-57.

On April 22, 2012, Zarlengo performed a massage for a guest.  Id. at 67.  The guest asked Zarlengo to change his technique.  Id.  Zarlengo tried to accommodate the guest's request.  Id.  The guest remained dissatisfied and submitted a complaint about the massage.  Id.  Hillbrook decided to not charge the guest for the massage.  Id. at 70.  Zarlengo informed Hillbrook that he still expected to be paid for the appointment.  Id. at 72.  Hillbrook informed Zarlengo that he could receive payment but, if he so chose, Hillbrook would no longer use him as a massage therapist.  Id. at 73.  Zarlengo decided to take the payment.  Id.  After Hillbrook paid Zarlengo for the massage, it no longer used Zarlengo as a massage therapist.  Id. at 72.

### 2. Procedural History

After Zarlengo stopped working at Hillbrook, he sued Hillbrook under Title VII of the Civil Rights Act of 1964.  His complaint raises a single individual disparate treatment claim

alleging Hillbrook terminated his employment because of his sex. On August 8, 2014, Hillbrook filed a Motion for Summary Judgment. Hillbrook argues, among other things, that Title VII does not protect Zarlengo because he was an independent contractor. Zarlengo did not file a response. Given the absence of a response, Hillbrook filed a Request for Entry of Order Granting Motion for Summary Judgment and, on September 15, 2014, filed a renewed motion seeking that relief.

## II. Standard of Review

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, a court determines "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the non-moving party must come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations

omitted). A court should deny summary judgment "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.3d 245 (4th Cir. 1967); see also id. at 253 (noting "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

Title VII only protects employees. Farlow v. Wachovia Bank of N. Carolina, N.A., 259 F.3d 309, 313 (4th Cir. 2001); see also 42 U.S.C. § 2000e-2(a)(1). It does not, however, provide much guidance as to who qualifies an employee, defining the term only as "an individual employed by an employer." 42 U.S.C. § 2000e(f). As such, federal courts draw on the common law of agency to determine whether a person is an employee under Title VII. Farlow, 259 F.3d at 313.

The touchstone of the agency analysis is "the degree of the 'hiring party's right to control the manner and means by which the product is accomplished.'" Id. (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989)). The focus is on "the degree of control of the professional services rendered rather than 'peripheral, administrative details which were incidental to the rendering of . . . services.'" Id. (quoting Robb v. United States, 80 F.3d 884, 889 (4th Cir. 1996)). This analysis also requires consideration of the following factors outlined by the Supreme Court in Reid with no one factor dispositive:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants;

5

whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. (quoting Reid, 490 U.S. at 751-52). Additionally, two other factors are relevant to this inquiry. First, the Fourth Circuit has held "the parties' beliefs regarding the nature of the employment relationship are significant." Id. Second, when deeming an attorney a bank's independent contractor in Farlow, the Fourth Circuit highlighted the fact that the bank did not preclude the attorney from representing other clients. Id. at 315.

Turning first to the degree of control Hillbrook exercised over the manner of Zarlengo's work, Hillbrook did not direct Zarlengo to perform massages in a particular way, train him, or evaluate how he gave massages. Instead, Hillbrook assigned Zarlengo to appointments when he stated he was available, and Zarlengo gave the massage based on his own skills. This lack of control over the manner of Zarlengo's work strongly indicates he was an independent contractor. See id. at 316.

Also favoring independent contractor status is the significant discretion Zarlengo exercised over when and how long he worked. See Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 261 (4th Cir. 1997) (noting fact that physician did not work uniform hours and proposed number of hours he could work and how those hours would be allocated to shifts showed he was an independent contractor). Indeed, Zarlengo told Hillbrook when he was available, and Hillbrook assigned him to a massage based on that availability. Hillbrook did not require Zarlengo to work a set number of hours or at certain times.

Next, the Court assesses the source of the instrumentalities and location of the work. These factors indicate an employment relationship when an entity provides an individual with equipment to perform work and the individual works on site. Farlow, 259

F.3d at 314. That is true in this case. Zarlengo gave massages at Hillbrook and used Hillbrook's massage equipment. Thus, these factors favor finding Zarlengo was an employee.

The Court now considers the nature of Hillbrook's business and the duration of the working relationship. Hillbrook is an inn and spa and offers massage treatments as part of its spa services. As for the duration of the parties' relationship, Zarlengo gave massages at Hillbrook for a lengthy period of over one year. These factors therefore indicate an employment relationship existed between Hillbrook and Zarlengo. See id. (noting fact that attorney worked on premises of bank for ten months after working remotely for several years indicated she was an employee).

Next, the Court reviews the factors regarding Hillbrook and Zarlengo's financial relationship–the method of payment, provision of employee benefits, and tax treatment of Zarlengo. The Fourth Circuit has stated these factors among the most significant to the agency analysis. See id. at 316. As such, the absence of employment benefits and an employer's failure to pay payroll taxes "is 'highly indicative'" that an individual is an independent contractor. Id. at 315 (quoting Aymes v. Bonelli, 980 F.2d 857, 862 (2d Cir. 1992)). Tax and benefit treatment of an individual "can be 'virtual admissions' of the party's status." Id. (quoting Aymes, 980 F.2d at 862). Further, a lack of "regular, periodic payments" indicates independent contractor status. Id. (quoting Kirk v. Harter, 188 F.3d 1005, 1008 (8th Cir. 1999)).

Here, Zarlengo was paid for each massage appointment he completed, not on a bi-weekly or other payment schedule. Additionally, Hillbrook did not withhold taxes from Zarlengo's compensation. His earnings instead were reported on a Form 1099, not the W-

2 Form used for employees. Moreover, Hillbrook did not give Zarlengo any employee benefits. Zarlengo did not receive health insurance, paid sick leave, or paid vacation from Hillbrook. Hillbrook also did not cover Zarlengo's premiums for the liability insurance he carried as a massage therapist. Thus, all of the financial factors indicate Zarlengo was an independent contractor. The Court affords them great weight. See id. at 315-16.

It is also critical to consider whether Hillbrook precluded Zarlengo from pursuing other employment opportunities in the massage field. See id. at 315 (weighing fact that bank did not preclude attorney from representing other clients in her capacity as an attorney in favor of independent contractor status); see also Cilecek, 115 F.3d at 261 (finding it relevant to consider whether health services organization precluded doctor from working at other facilities or a competitor). Hillbrook did not prohibit Zarlengo from providing massage services to other entities or individuals. The record reflects that Zarlengo did provide massage treatments outside of Hillbrook, having given massages at the Clarion. These facts are strong evidence that Zarlengo was an independent contractor. See Farlow, 259 F.3d at 316 (finding this factor significant to agency analysis).

Finally, although the parties' actual understanding of their relationship is relevant, there is little to no evidence in that regard. The Fourth Circuit generally relies on an agreement stating an individual was an independent contractor as evidence that the parties understood there was no employment relationship. See id. at 315; Cilecek, 115 F.3d at 258, 261. Because Hillbrook and Zarlengo did not have such an agreement, this factor carries no weight.[2]

---

[2] Because there is no evidence showing Zarlengo retained assistants or Hillbrook assigned additional projects to its massage therapists, the Court also does not afford

Viewing all of these factors together, a majority of the factors–including the most significant factors–demonstrate Zarlengo was an independent contractor. Those factors are: (1) Hillbrook had no control over the manner of Zarlengo's work; (2) Hillbrook did not prohibit Zarlengo from providing massage services to other entities, and Zarlengo did so for another entity during the relevant time period; (3) Hillbrook paid Zarlengo per appointment, not on a regular basis; (4) Hillbrook did not provide Zarlengo any benefits typical of an employment relationship; (5) Hillbrook did not withhold taxes from Zarlengo's compensation, Zarlengo paid his own taxes, and a Form 1099 was filed; and (6) Zarlengo determined when he was available for appointments as Hillbrook did not mandate that he work a set schedule or number of hours. On the other hand, the duration of Hillbrook and Zarlengo's relationship, the fact that Hillbrook provided Zarlengo with a facility to give massages and massage equipment, and the fact that massage was part of Hillbrook's spa business favor finding an employment relationship. These factors, however, do not overcome the weightier factors because they are comparatively weak evidence of an employment relationship. See Farlow, 259 F.3d at 316. Indeed, in Farlow, the Fourth Circuit deemed an individual an independent contractor even though several factors favored employee status because, similar to this case, the financial factors, lack of control over the manner of work, lack of preclusion from other employment in the field, and presence of a contract stating the individual was an independent contractor were most significant. Id. Accordingly, the Court holds that Zarlengo was an independent contractor

---

those factors any weight.

of Hillbrook. His employment discrimination claim therefore fails as a matter of law because Title VII does not cover him.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's Motion for Summary Judgment. The Court **DENIES AS MOOT** the Renewed Motion and Request for Entry of Order Granting Motion for Summary Judgment. Accordingly, the Court **DISMISSES** this action **WITH PREJUDICE**. The Court further **ORDERS** that this case be **STRICKEN** from this Court's active docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** September 17, 2014

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE